## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| FEDERAL TRADE COMMISSION | : | Civil Action No.: 1:15-cv-2362 |
| | : | |
| and | : | |
| | : | |
| COMMONWEALTH OF | : | |
| PENNSYLVANIA, | : | |
| | : | |
| Plaintiffs, | : | Hon. John E. Jones III |
| | : | |
| v. | : | |
| | : | |
| PENN STATE HERSHEY MEDICAL | : | |
| CENTER | : | |
| | : | |
| and | : | |
| | : | |
| PINNACLEHEALTH SYSTEM | : | |
| | : | |
| Defendants. | : | |

## MEMORANDUM OPINION

### May 11, 2017

Presently before the Court is the Commonwealth of Pennsylvania's Motion

for Attorney's Fees and Costs under Section 16 of the Clayton Act. (Doc. 143).

This Motion arises following the Third Circuit's opinion in *Federal Trade*

*Commission v. Penn State Hershey Medical Center*, 838 F.3d 327 (3d Cir. 2016)

("*Hershey*"), issued on September 27, 2016. Therein, the Third Circuit considered

a proposed merger between Defendants Penn State Hershey Medical Center and

PinnacleHealth System (collectively, "Defendants").  The Third Circuit granted

Plaintiffs the Federal Trade Commission and the Commonwealth of Pennsylvania

preliminary injunctive relief, enjoining the merger pending the outcome of an

administrative adjudication on the merits, to be conducted by the Federal Trade

Commission.  *Hershey*, 838 F.3d at 354.

Thereafter, the Commonwealth filed the instant Motion, which has been

fully briefed and is accordingly ripe for our review.  (Docs. 144, 146 and 147).[1]

For the reasons to follow, the Commonwealth's Motion shall be denied.

## I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY [2]

The above-captioned action commenced with the filing of a Complaint on

December 9, 2015.  (Doc. 4).  Therein, the Federal Trade Commission ("FTC"),

joined by the Commonwealth of Pennsylvania, sought a preliminary injunction

preventing the merger of two hospitals, Penn State Hershey Medical Center

("Hershey") and PinnacleHealth Systems ("Pinnacle"), pending the outcome of the

FTC's adjudication on the merits.  The suit was filed under Section 13(b) of the

Federal Trade Commission Act ("FTC Act"), 15 U.S.C. § 53(b), and Section 16 of

the Clayton Act, 15 U.S.C. § 26.

---

[1]       On March 2, 2017, Defendants placed supplemental authority on the docket alerting the
Court to the existence of newly filed, relevant case law.  (Doc. 150).  The Court ordered, and has
since reviewed, submissions from both parties pertaining to that filing as well.  (Docs. 159, 160).
[2]       This case involves a lengthy and complex factual history.  As the Court writes primarily
for the benefit of the parties, who are intimately familiar with the background of this case, only
factual matter relevant to the resolution of the instant Motion is included here.

For a period of five days in mid-April, this Court held evidentiary hearings and heard testimony from sixteen witnesses. On May 9, 2016, Plaintiffs' Motion for a Preliminary Injunction was denied. (Doc. 131). Plaintiffs timely filed a Notice of Appeal (doc. 132), and thereafter our Court of Appeals heard oral argument from the parties. On September 27th, the Third Circuit issued an opinion reversing our denial of the Motion for Preliminary Injunction and remanded the case, directing that the merger of Defendants be preliminarily enjoined pending the outcome of the FTC's administrative adjudication. *FTC v. Penn State Hershey Med. Ctr.*, 838 F.3d 327, 353-54 (3d Cir. 2016) ("*Hershey*"). We issued an order so doing on October 20, 2016. (Doc. 142).

Meanwhile, on October 14, 2016, the Pennsylvania State University Board of Trustees voted unanimously to accept Penn State Health's recommendation terminating the Affiliation Agreement with Pinnacle. (Doc. 143, ¶ 8). Similarly, Pinnacle also announced that it was abandoning its merger efforts with Hershey based on the Third Circuit's opinion and judgment. (*Id.*, ¶ 9).

As noted above, on November 2, 2016, the Commonwealth filed the instant Motion for Attorney's Fees and Costs under Section 16 of the Clayton Act. (*Id.*). Therein, the Commonwealth seeks $1,033,355.50 in attorney's fees and related costs and $160,072.76 in litigation costs. (*Id.*, ¶ 15). Defendants vigorously

oppose the Motion, arguing against it on a variety of procedural and substantive

grounds.  We consider each argument in turn below.

## II.    ANALYSIS

Section 16 of the Clayton Act, entitled "[i]njunctive relief for private

parties," provides:

> [i]n any action under this section in which the plaintiff substantially prevails, the court shall award the cost of suit, including a reasonable attorney's fee, to such plaintiff.

15 U.S.C. § 26.  Defendants argue that because the Third Circuit evaluated

Plaintiffs' claims solely under Section 13(b) of the FTC Act, the Commonwealth's

request for fees under Section 16 should be denied.

### A.    Whether Plaintiffs may seek attorney's fees pursuant to Section 16 of the Clayton Act

Section 13(b) of the FTC Act and Section 16 of the Clayton Act employ

slightly different standards.  *Hershey*, 838 F.3d at 337 ("The public interest

standard is not the same as the traditional equity standard for injunctive relief.").

Section 13(b) is a specialized statute applicable only to suits brought by the FTC,

"[t[he purpose of [which] is to preserve the status quo and allow the FTC to

adjudicate the anticompetitive effects of the proposed merger in the first instance."

*Id*. at 352.  The public interest standard employs a two-pronged approach.  Under

Section 13(b), "[a] district court may issue a preliminary injunction '[u]pon a

proper showing that, weighing the equities and considering the Commission's

likelihood of success, such action would be in the public interest.'" *Id*. at 337

(citing 15 U.S.C. § 53(b)).  Unlike Section 16 of the Clayton Act, Section 13(b)

does not permit fee shifting.  *See FTC v. Staples, Inc*., -- F.Supp.3d ---, 2017 WL

782877, at *1, (D.D.C., Feb. 28, 2017) ("Unlike the Clayton Act, the FTC Act does

not grant attorney's fees to prevailing plaintiffs.").

> Meanwhile, Section 16 of the Clayton Act states that:

> Any person, firm, corporation, or association shall be entitled to sue for and
> have injunctive relief . . . against threatened loss or damage by a violation of
> the antitrust laws . . . when and under the same conditions and principles as
> injunctive relief against threatened conduct is granted by courts of equity,
> under the rules governing such proceedings . . . .

15 U.S.C. § 26.  As noted above, Section 16 contains a fee shifting provision.  15

U.S.C. § 26.

Traditionally, "[a] plaintiff seeking a preliminary injunction must establish

that he is likely to succeed on the merits, that he is likely to suffer irreparable harm

in the absence of preliminary relief, that the balance of equities tip in his favor, and

that an injunction is in the public interest."  *Glossip v. Gross*, 135 S.Ct. 2726,

2736-37 (2015) (citing *Winter v. Natural Res. Def. Council, Inc*., 555 U.S. 7, 20

(2008)).  Instead of two elements then, a court must consider four factors under the

traditional equity standard for injunctive relief.

The parties vigorously debate whether the Third Circuit applied the two-

pronged test appropriate for injunctive relief analyzed under Section 13(b), or the

four-pronged test set forth by the traditional equity standard. Careful review of the Third Circuit's opinion in *Hershey* shows that Defendants are correct to note that our Court of Appeals solely applied the standard outlined by Section 13(b) of the FTC Act. Indeed, at the outset of its analysis, the Third Circuit states that "the Government seeks a preliminary injunction under Section 13(b) of the FTC Act" with no mention of the Commonwealth's pursuit of an injunction pursuant to Section 16. *Hershey*, 838 F.3d at 337. The court goes on to describe the public interest standard applicable to a motion for a preliminary injunction under Section 13(b), and specifically emphasizes that the standard differs from the traditional equity standard for injunctive relief. *Id*. Most importantly, throughout the remainder of its analysis, the court proceeds under the public interest standard and does not consider the additional factor of irreparably harm required under the traditional equity standard.[3]

However, it does not unequivocally follow, as Defendants assert, that because the Third Circuit ruled under Section 13(b), the Commonwealth may not claim costs and fees pursuant to Section 16. At the time that this matter was initially briefed, no case law existed directly on point regarding whether, having

---

[3]    The Commonwealth argues that if the Commonwealth and the FTC had prevailed solely under Section 13(b), the Commonwealth would have been an improper party and so lacked standing to participate in the litigation. (Doc. 147, p. 5). This argument is misplaced; rather, the parties proceeded under Section 13(b) and the Third Circuit, finding relief to be merited under the more lenient standard, did not consider the second, more strenuous, standard. It does not follow from this omission that the Commonwealth was necessarily not a proper plaintiff or that its suit was misplaced.

partnered with the FTC and obtained relief under Section 13(b), a co-plaintiff may nonetheless claim costs and fees through a different statute.

Since then, however, the federal district court for the District of Columbia has issued an opinion directly on point regarding this issue, *FTC v. Staples, Inc.*, --F.Supp.3d ---, 2017 WL 782877 (D.D.C., Feb. 28, 2017) (Sullivan, J.) ("*Staples*"). Therein, Judge Sullivan determined that to allow plaintiffs to recover fees under one statute while arguing under another was to impermissibly allow plaintiffs to "have it both ways." *Staples*, 2017 WL 782877, at *1 ("[Plaintiffs] cannot ride the FTC's claim to a successful preliminary injunction under the more permissive Section 13(b) standard and then cite that favorable ruling as the sole justification for fee-shifting under the more rigorous Clayton Act standard." ).

Though on point, *Staples* is not binding precedent here. Rather, we are tasked to make a ruling of first impression within the Third Circuit. While we find Judge Sullivan's opinion well-reasoned, it is ultimately unpersuasive. Rather, for a number of reasons to follow, we find that an individual plaintiff who partners with the FTC to argue under Section 13(b) should not be barred from seeking attorney's fees under Section 16.

First, in drafting Section 16, Congress intended that an individual plaintiff should not bear "the very high price of obtaining judicial enforcement of . . . the

antitrust laws." H.R. Rep. No. 94-499, at 19-20 (1976).[4]  A ruling that allows the Commonwealth to pursue its fees and costs under Section 16, despite its partnership with the FTC, comports with that spirit.  Pennsylvania brought value to the case by providing the FTC with supplemental knowledge of the region and by assuming the role of advocate on behalf of Pennsylvania citizens.  To disincentivize the participation of the Commonwealth and other individual plaintiffs who seek to enforce our antitrust laws by burdening such individuals with the high costs of litigation is to depart from congressional intent regarding the enforcement of Clayton Act.  This we shall not do.

Our second rationale is grounded in judicial efficiency.  There is no dispute that the Commonwealth could have pursued a preliminary injunction pursuant to Section 16 apart from the FTC.  Assuming it prevailed, the Commonwealth would have then been entitled to pursue reasonable fees and costs.  Of course, whether Pennsylvania would have indeed achieved a preliminary injunction under the slightly different standard remains unknown.  However, to find now that Pennsylvania may not pursue attorney's fees under Section 16 implicitly encourages duplicative litigation, separate filings, and repetitive arguments.  Such a finding would be, to say the least, highly inefficient.  Rather, we decline to find

---

[4]      States were specifically contemplated as within the scope of individual plaintiffs.  The Commonwealth notes, and Defendants do not dispute, legislative history clarifying that "[s]tates would be entitled to recover reasonable attorney's fees whenever they prevail in Sec. 16 cases." Doc. 144, p. 5 (quoting H.R. Rep. No. 94-499, at 19-20 (1976)).

that the decision of the FTC and the Commonwealth to "speak in a unified voice," thereby conserving judicial resources and putting forth a consolidated argument, precludes the Commonwealth from proceeding under Section 16 here, as it would have done had it acted independently.

As noted above, no case law on point with the instant issue exists within our Circuit. Third, however, the spirit of *Maher v. Gagne*, 448 U.S. 122 (1980) and its progeny comports with our determination here. In *Maher*, the Supreme Court determined that the Eleventh Amendment does not bar courts from awarding attorney's fees in a suit where the complainant alleges both statutory, non-civil rights claims and constitutional violations, so long as those constitutional violations are substantial enough to support federal jurisdiction and they remain in dispute when the parties reach a settlement. *Maher v. Gagne*, 448 U.S. 122, 130-32 (1980); *Greene v. Gibraltar Mortgage Investment Corp.*, 529 F.Supp. 186, 187-88 (D.D.C. 1981) ("The Supreme Court in *Maher* rejected the argument that attorney's fees should be denied where a fee-generating claim is joined with a non-fee-generating claim, and recovery is had on the latter without reaching the merits of the former.").

Similarly, in *Greene v. Gibraltar Mortgage Investment Corp.*, 529 F.Supp. 186, 187-88 (D.D.C. 1981), the district court for the District of Columbia considered an attorney's fee award in a case where the plaintiff's fee-generating

claims under the D.C. Consumer Protection Procedural Act and the Truth in Lending Act had not been reached.[5]  The district court relied on *Maher* to find that where those claims arose from the same operative facts as the claims the court did reach, it "would defeat the legislative intent of fee provisions . . . which is to encourage vindication of important rights on the part of plaintiffs who ordinarily could not afford to ventilate their claims were [the court] to deny recovery."  *Id.*

Finally, in *ADT Security Services, Inc., v. Lisle-Woodridge Fire Protection District*, 86 F.Supp.3d 857 (N.D. Ill., 2015) ("*ADT*"), the district court for the Northern District of Illinois considered the defendants' argument that "because this Court entered the permanent injunction on the basis of the Illinois Act and not a federal fee-shifting statute, [plaintiffs] did not "prevail" in respect to any fee-shifting statute and hence are not entitled to fees."  *ADT*, 86 F.Supp.3d at 864. Though involving the Illinois Act instead of the FTC Act, the *ADT* plaintiffs sought attorney's fees under the Clayton Act[6] as the Commonwealth does here. Citing *Maher*, the court disregarded the "cramped view" put forth by defendants and instead observed that plaintiffs' requests for relief were all premised on the same set of facts, and thus were closely related.  *Id.* at 865 ("[T]he standard for determining whether a constitutional ground is 'closely related' to the

---

[5]      The plaintiff had prevailed on her common law contract claims alone.  *Greene*, 529 F.Supp. at 187-88.
[6]      More specifically, Plaintiffs sought damages and attorney's fees under § 1988, Section 26 of the Clayton Act, and Section 15 of the Clayton Act.  *ADT*, 86 F.Supp.3d at 862.

nonconstitutional ground to support a fee award is the 'common nucleus of operative fact' standard") (citing *Smith v. Robinson*, 468 U.S. 992, 1005 (1984)).

In *ADT*, the court went on to conclude that "the fact that [plaintiffs'] constitutional and anti-trust theories of relief went unadjudicated [does not] . . . affect [plaintiffs'] express entitlement to fees under Section 1988. . . . While there is no case as directly on point as *Maher* was in regard to Section 1988, there is also no reason to construe Section 26 [of the the Clayton Act][7] more narrowly than Section 1988." *Id*. at 866 (concluding that plaintiffs were entitled to an award of fees under both Section 1988 and the Clayton Act).

Here too, we find that the Commonwealth's request for injunctive relief under Section 16 of the Clayton Act arose primarily out of the same operative facts Plaintiffs argued in support of their preliminary injunction requested under Section 13(b) of the FTC Act. Further, both claims, though arising under different standards, considered primarily the same issues, the touchstone being the likelihood of achieving an injunction preventing the hospital merger in an adjudication before the FTC. Accordingly, for these and all the reasons discussed above we find that the Commonwealth is entitled to seek fees as provided under Section 16 of the Clayton Act.

---

[7]     The court in *ADT* chose to refer to the provision on the Clayton Act numbered internally as Section 16 as Section 26, in reference to its citation, 15 U.S.C. § 26. Here, however, we refer to Section 16 of the Clayton Act as Section 16 in accordance with its internal numbering and in order to retain continuity with the parties. They are, in fact, the same provision.

**B.    Whether the Commonwealth "substantially prevailed" within the meaning of Section 16 of the Clayton Act**

Having determined that the Commonwealth may proceed under Section 16 of the Clayton Act, we now consider whether the Commonwealth's Motion is substantively meritorious.

In order for the Commonwealth to succeed in its request for attorney's fees, it must "substantially prevail" on an action arising under Section 16. 15 U.S.C. § 26. Defendants argue that the Commonwealth did not "substantially prevail" because it did not receive a judgment on the merits and instead obtained only interim relief. Defendants also argue that, in support of its position as a prevailing party, the Commonwealth puts forth a rendition of the "catalyst theory," which was rejected by the Supreme Court in *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602-05 (2001). We first consider whether the catalyst theory or the new standard set forth in *Buckhannon* is appropriate here.

"The Supreme Court had previously recognized the 'catalyst theory' of prevailing-party status, whereby attorney's fees could be awarded in circumstances where defendants 'voluntarily changed their behavior to eliminate the complained-of conduct.'" *Unite Here, Local 54 v. City of Atlantic City*, Civil No. 11-6273, 2012 WL 1455249, at *3 (D.N.J., April 26, 2012) (citing *Buckhannon Bd. & Care Home v. W. Va. Dep't of Health & Human Res.*, 532 U.S. 598, 602-05 (2001)). The catalyst theory was put aside by the Supreme Court in *Buckhannon*, a case

arising under the fee-shifting provisions of the Fair Housing Amendments Act and the Americans with Disabilities Act. *Buckhannon*, 532 U.S. at 600-01 ("Numerous federal statutes allow courts to award attorney's fees and costs to the "prevailing party." The question presented here is whether this term includes a party that has failed to secure a judgment on the merits or a court-ordered consent decree, but has nonetheless achieved the desired result because the lawsuit brought about a voluntary change in the defendant's conduct. We hold that it does not.").

The Commonwealth argues that the standard put forth by the Court in *Buckhannon* is applicable only to civil rights fee cases and not those arising under the Clayton Act. (Doc. 147, p. 6 n.6). The Commonwealth cites no case law in support of this assertion, however, and argues only that the different public policies behind the distinct fee-shifting provisions bolster its position.

We disagree with the Commonwealth's assertion. Though it may be true that no case law exists applying the standard established in *Buckhannon* to Section 16 of the Clayton Act in the Third Circuit, other courts such as the district court for the District of Columbia in the aforementioned *Staples* case have found it applicable. *Staples*, 2017 WL 782877, at *3 ("[T]he catalyst rule as a mechanism for obtaining attorney's fees in certain circumstances was rejected by the Supreme Court in [*Buckhannon*]."); *Saint Alphonsus Med. Center-Nampa Inc. v. St. Luke's Health System, Ltd*., Civ. Action No. 1:12-cv-00560, 2015 WL 2033088, at *1 (D.

Idaho, April 29, 2015) (applying the *Buckhannon* standard to a motion for attorney's fees pursuant to Section 16 of the Clayton Act); *ADT*, 86 F.Supp.3d at 863, (N.D.Ill. 2015) (observing that "[i]t is not entirely clear to what extent Buckhannon's definition of "prevailing party" applies to [the Clayton Act's] "substantially prevails" but "there is also no reason to construe [the Clayton Act] more narrowly than Section 1988"); *see also Utility Automation 2000, Inc. v. Choctawhatchee Elec. Co-op, Inc.*, 298 F.3d 1238, 1247-48 (11th Cir. 2002) (applying the *Buckhannon* standard to a private contract providing for attorney's fees).

The most persuasive authority for our application of the *Buckhannon* standard to the Clayton Act fee-shifting provision is the language of *Buckhannon* itself. In rendering its decision, the Supreme Court listed a variety of statutes Congress drafted authorizing the award of attorney's fees to "prevailing part[ies]" including not only the Civil Rights Act of 1964, but also the Voting Act Amendments and the Civil Rights Attorney's Fees Awards Act. The Court also cited to an appendix attached to the dissenting opinion of Justice Brennan in *Marek v. Chesny*, 473, U.S. 1 (1985). The appendix listed a variety of statutes with fee shifting provisions, including the Clayton Act itself. The Court then went on to explain that, "we have interpreted these fee-shifting provisions consistently . . . and so approach the nearly identical provisions at issue here." *Buckhannon*, 532

U.S. 602-03 n.4 (internal citations omitted).  This language, along with the

unwavering decisions of other courts to apply *Buckhannon* to the fee-shifting

provisions of the Clayton Act, compels us to do the same here.

Having found the *Buckhannon* standard applicable, we turn now to

Defendants' contention that the Commonwealth is not entitled to attorney's fees

because it did not "substantially prevail" within the meaning of Section 16.  In

support of their position, Defendants point us to *Singer Management Consultants,*

*Inc. v. Milgram*, 650 F.3d 223 (3d Cir. 2011) ("*Singer*").

In *Singer*, the Third Circuit reviewed a district court's refusal to grant

attorney's fees where a plaintiff had succeeded in obtaining a Temporary

Restraining Order.  *See generally Singer*, 650 F.3d 223 (3d Cir. 2011).  During the

preliminary injunction hearing held by the district court, the defendant, the state of

New Jersey, changed its interpretation of the legislation in dispute to conform to

the plaintiff's view, thus obviating the need for further litigation.  *Id*.  Citing

*Buckhannon*, the Third Circuit first set forth the definition of a prevailing party:[8]

> To be eligible to make a prevailing-party claim under §1988, the plaintiff
> must, "at a minimum, . . . be able to point to a resolution of the dispute
> which changes the legal relationship between itself and the defendant."  The
> change must be "judicially sanctioned," and must "achieve[ ] some of the
> benefit the part[y] sought in bringing suit," . . . .  A "voluntary change in
> conduct . . . lacks the necessary judicial imprimatur on the change."  In other

---

[8]    In accordance with the Supreme Court's instruction in *Buckhannon*, we interpret the
definition of a prevailing party and a party who has "substantially prevailed" to be consistent
with one another.

words, "a plaintiff does not become a 'prevailing party' solely because his lawsuit cases a voluntary change in the defendant's conduct." Rather, the change in the parties' legal relationship must be the product of judicial action."

*Id*. at 228 (internal citations omitted).

In the case *sub judice*, as the parties well know, the Third Circuit's determination to enter a preliminary injunction contributed to Defendants' decision not to proceed with the merger. Because of Defendants' decision, the FTC's administrative adjudication on the merits of the merger did not go forward. However, this course of events is not sufficient evidence that the Commonwealth was a "prevailing party." Rather, only "enforceable judgments on the merits and court-ordered consent decrees create the 'material alternation of the legal relationship of the parties' necessary to permit an award of attorney's fees.'" *Buckhannon*, 532 U.S. at 604 (citing *Tex. State Teachers Ass'n v. Garland Indep. Sch. Dist.*, 489 U.S. 782, 792-93 (1989)); *Providence Pediatric Med. Daycare Inc., v. Poonam Alaigh*, -- Fed.Appx.---, 2016 WL 7104910, at *3 (3d Cir. Dec. 6, 2016) ("As the Supreme Court has explained, a defendant's voluntary change in conduct, although perhaps accomplishing what the plaintiff sought to achieve by the lawsuit, lacks the necessary judicial imprimatur on the change." (internal citations and quotations omitted)).

Here, as in *Singer*, the parties go on to dispute the meaning and characteristics of an enforceable judgment on the merits. The merits requirement

dictates that any judgment a party seeks to use to obtain legal fees must have been made on the merits of at least some of that party's arguments. *Singer*, 650 F.3d at 229 ("'Congress intended to permit the interim award of counsel fees *only* when a party has prevailed *on the merits* of at least some of his claims.'" (quoting *Hanrahan v. Hampton*, 446 U.S. 754, 758, 100 S.Ct. 1987 (1980) (*per curiam*))).

> However, the "merits" requirement is difficult to meet in the context of TROs and preliminary injunctions, as the plaintiff in those instances needs only to show a likelihood of success on the merits (that is, a reasonable chance, or probability, of winning) to be granted relief. A "likelihood" does not mean more likely than not. Because of this, we have held that a court's finding of "reasonable probability of success on the merits" is not a resolution of "any merit-based issue." As this "probability" ruling is usually the only merits-related legal determination made when courts grant TROs and preliminary injunctions, it follows that parties will not often "prevail" based solely on those events.

*Id.* (internal quotations omitted).

Indeed, in *Singer*, the Third Circuit went on affirm the district court's holding that the plaintiff had failed to obtain a merits-based judgment, *id.* at 230, noting the trial court's observation that "[w]hile it may be true that this court's involvement aided in the resolution of the constitutional issues between the parties, the fact remains that the issues were not resolved as the result of a court order." *Id.* at 228 (quoting trial court record). After explaining its finding, the Third Circuit emphasized that,

> we do not mean to "cast doubt" on the "well-supported legal proposition" that, in some cases, interim injunctive relief may be sufficient to warrant attorney's fees. We agree that "interim relief remains a proper basis for an

award of attorney's fees when that relief is based on a determination of the merits of the plaintiff's claims." We emphasize, however, that the determination must be merits-based . . . and may not be merely a finding of a likelihood of success on the merits . . . .

*Id.* at 230 n.4 (in response to Judge Roth's dissenting view).[9]

With this legal standard in mind, we turn now to whether the Third Circuit in *Hershey* awarded the Commonwealth an injunction based on the merits of its argument, or merely a decision that the Commonwealth had a likelihood of success on the merits before the FTC. For the forthcoming reasons, we find that the Third Circuit's holding was *not* a determination on the merits but instead a finding that the Commonwealth had shown a likelihood of success. Thus, the Commonwealth's Motion for Attorney's Fees shall be denied.

The initial paragraph of the Third Circuit's opinion in *Hershey* explains that the Commonwealth sought a preliminary injunction *pending the outcome of the FTC's adjudication on the merits.* *Hershey*, 838 F.3d at 333 (emphasis added).

---

[9] As an example of "that rare situation where a merits-based determination is made at the injunction stage" the Third Circuit points to its decision in *People Against Police Violence v. City of Pittsburgh*, 520 F.3d 226 (3d Cir. 2008). *Singer*, 650 F.3d at 229-30. In *PAPV*, the district court considered whether to grant a TRO. It concluded that not only was the city ordinance in question "facially unconstitutional" but that even if the city voluntarily elected not to enforce the ordinance against plaintiffs, "a permit regime devoid of any prescribed process would also be unconstitutional." *PAPV*, 520 F.3d at 229. Only then did the district court grant the plaintiffs' requested TRO. *Id.*

Another such example can be found in *ADT*, described above. There, the district court for the Northern District of Illinois awarded attorney's fees under Section 1988 as well as the Clayton Act following a grant of "partial summary judgment . . . on the question of whether [the Defendant] exceeded its authority under the Illinois Act and, finding that it did, issued a preliminary injunction against [defendant] barring it from enforcing its ordinance." *ADT*, 86 F.Supp.3d at 861.

Similarly, the opening paragraph of the court's analysis notes that "[i]n order to prevent the parties from merging until the FTC can conduct an administrative hearing on the merits to determine whether the merger violates Section 7, the Government seeks a preliminary injunction . . . ." *Id.* at 337. More tellingly, the Third Circuit stresses that "[a]t this stage, '[t]he FTC is not required to establish that the proposed merger would in fact violate Section 7 of the Clayton Act.' Accordingly, '[a] certainty, even a high probability, need not be shown ,. . . .'" *Hershey*, 838 F.3d at 337 (internal citations omitted). This recitation of the standard indicates to us that the Third Circuit approached its analysis with a focus on Plaintiffs' *likelihood* of success, rather than a full blown determination on the merits.

More importantly, throughout its analysis of whether Plaintiffs presented evidence showing they were likely to succeed on the merits, at no point did the court make the leap to state that Plaintiffs had *achieved* success on the merits. In finding that the first prong of the Section 13(b) standard was in Plaintiffs' favor, the Third Circuit repeatedly observed that Plaintiffs had only demonstrated a "likelihood" of success and not actual success. In fact, it implicitly or explicitly reinforced this view as many as four times on just a single page. *Hershey*, 838 F.3d at 352 ("We therefore conclude that the Hospitals have not rebutted the Government's prima facie case . . . . Accordingly, we hold that the Government

has carried its burden to demonstrate that it is *likely* to succeed on the merits"
(emphasis added)); *id*. ("Although the Government's showing of *likelihood* of
success creates a presumption in favor of preliminary injunctive relief . . . ."
(emphasis added) (internal quotations omitted)); *id*. ("[A]lthough we may consider
private equities . . . wherever the Government 'demonstrates a *likelihood* of
ultimate success . . . .'" (emphasis added)); *id*. ("The purpose of Section 13(b) is to
preserve the status quo and allow the FTC to adjudicate the anticompetitive effects
of the proposed merger in the first instance."). [10]

Based on our close read of the Third Circuit's opinion in *Hershey*, we do not
find that the court granted Plaintiffs a determination on the merits of their
arguments. Rather, we find that the Commonwealth succeeded only in establishing
a likelihood of success on the merits at a later stage in litigation – during the
upcoming FTC adjudication. Accordingly, we find that the Commonwealth did
not "substantially prevail" under Section 16 of the Clayton Act.

---

[10] Standing alone, this language is compelling. However, we further observe that at no
point did the Third Circuit grant summary judgment in favor of the Commonwealth as the
district court in *ADT* had done in conjunction with its issuance of a preliminary injunction; nor
did it making sweeping statements of the kind the district court made in *PAPV*. In short, not only
did the Third Circuit observe, many times, that it was making a determination that the
Commonwealth had achieved a likelihood of success, but further, we find nothing in *Hershey* to
contravene or undermine the court's statements.

## III.   CONCLUSION

For the reasons discussed above, we find that the Commonwealth is not entitled to attorney's fees under Section 16 of the Clayton Act.  Accordingly, the Commonwealth's Motion shall be denied.  A separate order shall issue in accordance with this ruling.